IN THE UNITED STATES DICTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| CHRISTINE HARDERS, et al.,<br><br>               Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER PRODUCTS, INC., f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; and IMERYS TALC AMERICA, INC., f/k/a LUZENAC AMERICA, INC.,<br><br>               Defendants. | Case No. 3:16-cv-00903-JPG-DGW |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER DEEMING THIS REMOVED LAWSUIT A "MASS ACTION" UNDER 28 U.S.C. § 1332(d)(11)(B)**

This Court's subject matter jurisdiction is uncontested. Nevertheless, plaintiffs seek an order declaring that the only legitimate basis for federal subject matter jurisdiction is the lawsuit's status as a "mass action" under 28 U.S.C. § 1332(d)(11)(B), even though defendants have offered three independent and alternative grounds for removal. Plaintiffs have presumably so moved in an effort to block the transfer of this lawsuit to a yet-to-be established MDL proceeding based on a provision of the Class Action Fairness Act ("CAFA") that bars transfer of a case to an MDL proceeding where the sole basis of subject matter jurisdiction is "mass action" status.

Plaintiffs' motion is procedurally flawed and substantively meritless.

*First*, plaintiffs improperly seek an advisory opinion from this Court. The Judicial Panel on Multidistrict Litigation ("JPML" or "Panel") has not even heard argument on the parties' positions regarding the propriety of creating a talc products MDL proceeding. Thus, the issue of

transfer is not yet (and may never be) ripe, and until it is, the question whether "mass action" status is the only basis of the Court's subject matter jurisdiction has no relevance to anything. Because there is no live controversy between the parties on the merits of MDL transfer of this action, the declaratory relief sought by plaintiffs is an advisory opinion that would contravene the Case or Controversy Clause of Article III of the Constitution.

*Second*, plaintiffs' motion should be denied because resolving the merits of transfer of a case to an MDL proceeding lies squarely within the ambit of the JPML, not this Court. Indeed, the Panel is slated to hear argument on the parties' positions regarding a potential talc products MDL proceeding at the end of September, which is precisely why defendants have moved for a stay in this case. It would be both inefficient and unfair to litigate the thorny jurisdictional issues raised by plaintiffs' motion in this Court when such issues are likely to overlap with those in any eventual MDL proceeding.

*Third*, even if the Court were to entertain the arguments advanced by plaintiffs in their motion, they would fail as a matter of law. With respect to fraudulent misjoinder, plaintiffs seek refuge in the fact that courts within the Southern District of Illinois have rejected that doctrine. However, as pointed out in defendants' notice of removal, the nationwide trend has been to recognize this important doctrine. Plaintiffs' arguments regarding the exercise of personal jurisdiction over the numerous non-forum plaintiffs similarly ignore the ample authority cited by defendants in their notice of removal; in addition, they misapply the law governing "mass actions" and the voluntary-involuntary rule for removal and fail to grapple with the well settled legal precept that allows defendants to plead alternative theories of removal in support of subject matter jurisdiction.

For all of these reasons, discussed more fully below, plaintiffs' motion should be denied.

**ARGUMENT**

I. **PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE IT SEEKS AN IMPERMISSIBLE ADVISORY OPINION.**

Plaintiffs' motion should be denied first and foremost because it seeks an advisory opinion plainly forbidden by Article III of the U.S. Constitution. As the Supreme Court has recognized, "the oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." *Flast v. Cohen*, 392 U.S. 83, 96 (1968) (quoting C. Wright, *Federal Courts* 34 (1963)). "[T]he implicit policies embodied in Article III" – which limits the federal judicial power to "cases" and "controversies" – "impose the rule against advisory opinions on federal courts." *Id.*; *see also, e.g.*, *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (an advisory opinion would be "anathema under Article III"); *In re Walton*, 340 B.R. 892, 893 (Bankr. S.D. Ind. 2006) ("Article III of the United States Constitution charges Article III Courts with the resolution of 'cases and controversies,' which precludes them from rendering advisory opinions.") (citing *Flast*, 392 U.S. at 96-97).

"The term 'advisory opinion' . . . is what you call a decision that does not resolve an actual case or controversy" – the hallmark of justiciability under Article III of the Constitution. *Ill. ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935, 941 (7th Cir. 1983). Critically, the possibility that a case or controversy between parties might *someday* manifest generally does not suffice because Article III courts "resolve *present* controversies." *United States v. Martin*, 732 F.2d 591, 592 (7th Cir. 1984) (emphasis added); *see also Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1205 (7th Cir. 1996) ("Our jurisdiction, however, is limited to present cases and controversies; we refuse to render advisory opinions."). Thus, federal courts may not adjudicate speculative or hypothetical future disputes. *See, e.g.*, *Barra*, 704 F.2d at 941; *Martin*, 732 F.2d at 592 ("The government urges us to hold that, pursuant to a *different* set of facts, convictions

3

under both statutes could stand. We, of course, will not render such an advisory opinion.") (emphasis added); *Lear Corp.*, 353 F.3d at 583 ("A declaration that A must indemnify B *if X comes to pass* has an advisory quality[.]") (emphasis added); *Hill v. City of Phx.*, No. CV-13-02315-PHX-DGC, 2014 U.S. Dist. LEXIS 141859, at *13 (D. Ariz. Oct. 6, 2014) ("Finally, the City also moves to dismiss potential § 1983 claims *not yet made* by Plaintiff. The Court will not give an advisory opinion.") (emphasis added).

  The rule against advisory opinions applies both to actions as a whole (where the action does not present a true case or controversy as to any issue) and to specific issues raised by the parties in an otherwise true case or controversy when those issues are not yet ripe. *See Harris v. Kellogg, Brown & Root Servs., Inc.*, No. 08-563, 2016 U.S. Dist. LEXIS 56193, at *11-12 (W.D. Pa. Apr. 27, 2016) (issuing ruling "at this stage of the case" would constitute an advisory opinion); *Van Winkle v. Allstate Ins. Co.*, 290 F. Supp. 2d 1158, 1169 (C.D. Cal. 2003) ("To rule on the viability of a claim that has not been set forth by a litigant and that has been discussed before the Court only in hypothetical terms is akin to issuing an advisory opinion. The Court reserves judgment until the issue comes squarely before it."). In *Harris*, for example, the plaintiffs commenced a wrongful death survival action against a government contractor arising out of the death of plaintiffs' son in Iraq. 2016 U.S. Dist. LEXIS 56193, at *2. After the court denied the defendant's motion requesting that the court apply Texas law to the liability and apportionment issues in the case and holding that Pennsylvania law controlled, the defendant moved for leave to file an interlocutory appeal to the Third Circuit. *Id.* at *2-3. In its proposed certification order, the defendant "frame[d] the issue for the Court of Appeals as if th[e] [district] [c]ourt [had] entered a definitive ruling on the applicability of the political question doctrine defense" in its choice-of-law order. *Id.* at *8. However, the district court only adjudicated the

4

choice-of-law question. *Id.* at *8-9. According to the court, "an interlocutory appeal presenting the Court of Appeals with both the choice of law question and the issue of the applicability of the political question defense would be wholly speculative because there [was] no definitive order from th[e] [c]ourt resolving the political question defense *at this stage of the case*." *Id.* at *11 (emphasis added). As a result, the court concluded that "[c]ertifying these questions would essentially request an advisory opinion from the appellate bench on a hypothetical and abstract legal issue[.]" *Id.*

Plaintiffs here likewise "essentially request an advisory opinion" on jurisdiction, and this Court should decline to answer it. Specifically, plaintiffs seek a declaration that this action is a "mass action" under 28 U.S.C. § 1332(d)(11)(B) *and* that there is no other basis for federal jurisdiction. (Pls.' Mot. at 1, 8.) But subject matter jurisdiction is uncontested in this case. Plaintiffs freely admit in their motion that they do not question jurisdiction. Rather, the purpose of their request is to "ensure that the bar against *transfer* of the suit 'to any other court' codified at 28 U.S.C. § 1332(d)(11)(C)(i) is honored and given *full and immediate effect*." (*Id.* at 8 (emphases added).) But the question of transfer under 28 U.S.C. § 1407 is not ripe, and it would only come into play *if* and *when* a multidistrict litigation proceeding were created. No such proceeding has been created to date. Indeed, the JPML will not hear argument on the propriety of establishing a talc products MDL until late September. In short, plaintiffs' motion "request[s] an advisory opinion . . . on a hypothetical and abstract legal issue" that has yet to ripen into a justiciable case or controversy. *Id.* On this ground alone, plaintiffs' motion should be denied.

## II. THE QUESTION OF TRANSFER RESTS WITH THE JPML, NOT THIS COURT.

Even if there were a live controversy between the parties with respect to the transferability of this action pursuant to 28 U.S.C. § 1332(d)(11)(C)(i), plaintiffs' motion would

still lack merit because the question of transfer to an MDL proceeding falls squarely within the purview of the JPML, *not* this Court.

Federal law provides that "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Further, "such transfers *shall* be made by the judicial panel on multidistrict litigation[.]" *Id.* (emphasis added). In other words, "[o]nly the judicial panel on multidistrict litigation can make such a transfer." *Creation Supply, Inc. v. Alpha Art Materials Co.*, No. 12 C 5456, 2012 U.S. Dist. LEXIS 157941, at *4 (N.D. Ill. Nov. 2, 2012) ("This Court lacks the authority to dismiss or transfer this case pursuant to 28 U.S.C. § 1407."). It follows perforce that the propriety of MDL transfer of a case removed to federal court pursuant to CAFA's "mass action" provision and on other grounds is a question reserved for the JPML, *not* the transferor court. *See, e.g.*, *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 939 F. Supp. 2d 1376, 1381 (J.P.M.L. 2013) (transferring actions and reasoning that "Section 1332(d)(11)(C)(i) does not prohibit Section 1407 transfer of an action removed pursuant to CAFA's mass action provision so long as another ground for removal is asserted");[1] *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2502, 2014 U.S. Dist. LEXIS 77978, at *2 (J.P.M.L. June 6, 2014)

---

[1] Approximately *two years* after the *Darvocet* cases were transferred to an MDL proceeding, the MDL *transferee* court determined that the non-"mass action" grounds for removal were without merit and therefore suggested to the JPML that it remand those cases to the transferor court. *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 106 F. Supp. 3d 849, 855, 858-59 (E.D. Ky. 2015). However, that ruling did not suggest – let alone hold – that a *transferor* court should pass on the merits of MDL transfer when creation of an MDL proceeding is imminent. If anything, it suggests the opposite – that the propriety of transfer should be decided in the MDL.

(transferring actions pursuant to Section 1407 notwithstanding Section 1332(d)(11)(C)(i), which "is not an impediment to transfer where other grounds for federal jurisdiction also are asserted").

For example, in *Lipitor*, plaintiffs in 81 actions moved to vacate the JPML's orders conditionally transferring those cases to an MDL proceeding in the District of South Carolina. 2014 U.S. Dist. LEXIS 77978, at *1. The plaintiffs argued that "Congress must have intended to preclude Section 1407 transfer of any action removed on CAFA mass action grounds" where a majority of the plaintiffs object to such transfer. *Id.* at *2-3. The JPML disagreed, reasoning that "nothing in CAFA or its legislative history suggests that Congress 'intended the mass action provision to render a case that otherwise would have been within the Panel's purview – *e.g.*, a case removed on diversity or federal question grounds – not transferrable merely because the defendant has cited the mass action provision as an additional ground in its notice of removal.'" *Id.* at *4 (quoting *In re Darvocet*, 939 F. Supp. 2d at 1380). "Indeed," the court observed, "reading the provision in such a manner 'would effect a partial repeal of the authority conferred by Section 1407 without any clear indication of legislative intent to do so.'" *Id.* (quoting *In re Darvocet*, 939 F. Supp. 2d at 1380). Moreover, as the JPML explained, when adjudicating the merits of Section 1407 transfer of a case removed as a "mass action" and on other grounds, the Panel does not "assess the reasonableness of those other grounds." *Id.* at *2.

In light of this decision, this Court should decline plaintiffs' invitation to weigh in on the merits of MDL transfer, which is a question for the JPML. Instead, as elaborated in defendants' motion to stay, this case should be stayed pending a determination whether to establish MDL No. 2738, *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*. (*See generally* Defs.' Mot. to Stay All Proceedings.) Plaintiffs' motion merely highlights the propriety of staying this case, because an MDL court would be

7

better suited to resolve jurisdictional questions, especially questions concerning fraudulent misjoinder and personal jurisdiction that are likely to arise in multiple cases. Accordingly, common practice and basic notions of judicial efficiency favor deferring the jurisdictional questions raised by plaintiffs' motion pending potential MDL transfer.

The summary order relied upon by plaintiffs in *Poletti v. Syngenta Corp.*, No. 3:15-cv-1221-DRH (S.D. Ill. Nov. 16, 2015) (cited in Pls.' Mot. at 1 (attached as Ex. A to Pls.' Mot.)), does not dictate a contrary result. Plaintiffs argue that the summary order supports their motion for an order deeming the instant lawsuit a "mass action" and finding that there is no other basis for federal jurisdiction. (Pls.' Mot. at 1.) But plaintiffs' reliance on that order is fundamentally misplaced because the defendants did not oppose the plaintiffs' motion, which sought a determination that the removed lawsuit was a "mass action." (Ex. A. to Pls.' Mot. (granting motion "in light of the defendants' lack of opposition").) Defendants' "lack of opposition" was unremarkable given that "no other ground for removal and jurisdiction [was] alleged[.]" (*Id.*) Here, by contrast, defendants have asserted multiple non-CAFA bases for removal. Because the JPML will assess the merits of transfer of this action to an MDL proceeding if and when such a proceeding is created, the Court should refrain from issuing a ruling that could potentially second-guess any future decision by the JPML. Accordingly, for this reason as well, plaintiffs' motion should be denied.

## III. DEFENDANTS' NON-"MASS ACTION" GROUNDS FOR REMOVAL ARE MERITORIOUS.

Finally, even if plaintiffs' motion were justiciable, and even if the Court could properly adjudicate the substance of that motion, it should still be denied on the merits.

### A.     <u>Defendants Properly Removed This Lawsuit Under The Fraudulent Misjoinder Doctrine.</u>

As detailed in defendants' notice of removal, diversity jurisdiction exists with respect to the 184 plaintiffs who do not share citizenship with any defendant because the eighteen non-diverse plaintiffs' claims were fraudulently misjoined. (*See* Notice of Removal ¶¶ 29-33.) Although plaintiffs contend that "the claims of all Plaintiffs arise out of closely related transactions, and there are significant questions of law or fact that are common to all the parties" (Compl. ¶ 227), this sprawling lawsuit is actually fraught with myriad individualized issues, not the least of which is the disparate medical history and disparate history of talc use of each plaintiff (Notice of Removal ¶ 33).

In their motion, plaintiffs assert that the Southern District of Illinois "'has routinely held that fraudulent misjoinder is not a valid basis for federal subject matter jurisdiction.'" (Pls.' Mot. at 4 (quoting *Reeves v. Pfizer, Inc.*, 880 F. Supp. 2d 926, 927 (S.D. Ill. 2012)).) But defendants acknowledged this line of authority in their notice of removal, explaining that it represents the "minority" approach and should be reconsidered accordingly. (Notice of Removal ¶ 30 n.4.)[2]

Nor should the Court accept plaintiffs' argument that diversity jurisdiction grounded on fraudulent misjoinder is contrary to the "voluntary-involuntary" rule, which allows removal only based on the voluntary acts of a plaintiff. (Pls.' Mot. at 6 (citing *Vogel v. Merck & Co.*, 476 F. Supp. 2d 996, 1002 (S.D. Ill. 2007)).) While the *Vogel* court refused to recognize fraudulent misjoinder as an "exception to the voluntary-involuntary rule," *Vogel*, 476 F. Supp. 2d at 1002, 1004, other courts have appropriately recognized that this rule does not apply where – as here –

---

[2]     Although this Court and others in this district have declined to adopt the fraudulent misjoinder doctrine in prior rulings, it is not bound to follow those decisions, which are not precedential. *E.g.*, *Matheny v. United States*, 469 F.3d 1093, 1097 (7th Cir. 2006) ("[D]istrict court opinions do not have precedential authority.").

parties are misjoined. *See Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006) ("[R]emoval on the basis of an unappealed severance, by a state court, of claims against improperly joined defendants is not subject to the voluntary-involuntary rule."); *Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co.*, 670 F. Supp. 2d 555, 562 (N.D. Tex. 2009) ("[T]he Court concludes that *Tapscott*-type misjoinder, just as the improper joinder of a defendant, is a basis for disregarding the citizenship of the misjoined party."). As one court of appeals succinctly explained, "[t]he fraudulent joinder exception to the voluntary-involuntary rule is designed to prevent plaintiffs from blocking removal by joining nondiverse and/or in-state defendants who should not be parties. That salutary purpose is also served by recognizing an exception to the voluntary-involuntary rule where defendants are improperly, though not fraudulently, joined." *Crockett*, 436 F.3d at 533. Defendants respectfully submit that *Crockett* and cases like it reflect a better reasoned and more faithful approach to the voluntary-involuntary rule. Accordingly, even if the Court were to consider plaintiffs' arguments, it should reject them on the merits.

### B. Defendants Properly Removed This Lawsuit Because Complete Diversity Of Citizenship Exists Between Defendants And The Only Plaintiffs Whose Claims Support Personal Jurisdiction Over Defendants.

As set forth in defendants' notice of removal, diversity of citizenship under 28 U.S.C. § 1332(a) also exists because there is complete diversity between defendants and the only plaintiffs asserting claims that give rise to this Court's personal jurisdiction over defendants. (*See* Notice of Removal ¶¶ 34-40.) Plaintiffs do not even attempt to argue that the Court has personal jurisdiction with respect to the claims being asserted by the non-forum plaintiffs. Instead, plaintiffs assert that this ground for removal should be rejected because: (1) the Court should assess subject matter jurisdiction before personal jurisdiction; (2) defendants have waived any argument regarding personal jurisdiction by removing the lawsuit as a "mass action"; (3) dismissal of the claims of the non-forum plaintiffs would not create diversity jurisdiction

consistent with the voluntary-involuntary rule; and (4) dismissal of the non-forum plaintiffs' claims would defeat the numerosity requirement of CAFA's "mass action" provision. (Pls.' Mot. at 6-7.) All of these arguments are unavailing.

*First*, plaintiffs assert that "[f]iling an extraneous motion accompanying removal and asking the Court to take it up prior to assessing jurisdiction is not grounds for removal." (*Id.* at 6.) But plaintiffs do not cite a single case supporting their position, which appears to be that the Court should determine federal subject matter jurisdiction before considering personal jurisdiction. In fact, this position flies in the face of authority cited by defendants in their notice of removal, which makes clear that courts can – and indeed, should – decide personal jurisdiction first because it is "more straightforward" and does "not present 'complex question[s] of state law,'" while the latter is "rather complicated" due to the fraudulent misjoinder issue. *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2016 WL 640520, at *3, *6 (N.D. Ill. Feb. 18, 2016) (citations omitted) ("Because dismissal of Bernaix's claims makes the parties completely diverse, the Court retains subject matter jurisdiction and therefore denies plaintiffs' motion to remand."); *see also* Notice of Removal ¶¶ 34-35 (collecting authority). Because plaintiffs' argument has been squarely rejected by courts, including those within the Seventh Circuit, it is legally unsupportable and should be rejected.

*Second*, there is no truth to plaintiffs' argument that defendants "have waived any argument there is no personal jurisdiction as to the claims of the non-forum Plaintiffs by virtue of removing [the lawsuit] as a mass action." (Pls.' Mot. at 7.) Plaintiffs' argument is premised on their view that a CAFA mass action "***must*** include Illinois (the forum state) and non-Illinoisans whose claims are proposed to be jointly tried," (*id.* (emphasis added)), and that defendants have

11

somehow contradicted their representation that this lawsuit is a mass action by seeking to dismiss the claims of the non-forum plaintiffs. (*Id.*) But CAFA does not impose the requirement advanced by plaintiffs in their brief. *See* 28 U.S.C. § 1332(d)(11)(B) (defining "mass action" as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact"). While CAFA provides an exception to jurisdiction where "all of the claims in the [mass] action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State," 28 U.S.C. § 1332(d)(11)(B)(ii)(I), that exception hardly imposes a requirement that certain of the 100 or more plaintiffs be citizens of states other than the forum. Rather, as set forth in defendants' notice of removal, "this exception is supposed to apply to a 'truly local single event' like 'environmental torts such as a chemical spill.'" *Dunn v. Endoscopy Ctr. of S. Nev.*, No. 2:11-cv-00560-RLH-PAL, 2011 U.S. Dist. LEXIS 129419, at *8 (D. Nev. Nov. 7, 2011) (quoting S. Rep. No. 109-14, at 47 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 44). Accordingly, plaintiffs' argument is a nonstarter and should be rejected.

*Third*, plaintiffs also assert that dismissal of the non-forum plaintiffs' claims would not support federal subject matter jurisdiction because "complete diversity would not be created pursuant [to] a 'voluntary act of Plaintiffs.'" (Pls.' Mot. at 7 (quoting *Vogel*, 476 F. Supp. 2d at 1003-07).) However, the *Vogel* court applied the voluntary-involuntary rule in the context of rejecting fraudulent misjoinder (which as previously explained was misguided), and did not address a scenario where a plaintiff has improperly joined non-forum plaintiffs whose claims do not give rise to personal jurisdiction over the defendants. "The voluntary-involuntary rule's significance appears to lie in the effect upon removability based on diversity which is caused by

12

the involuntary dismissal of a defendant without the assent of the plaintiff." *Wade v. Johnson & Johnson*, 54 F. Supp. 3d 1247, 1251 (W.D. Okla. 2014). It does not apply to "dismissal by the court of non-resident plaintiffs over which there is no personal jurisdiction." *Id.* ("Application of the voluntary-involuntary rule is not implicated because the state court judge's order did not result in the dismissal of a non-diverse defendant and was not on the merits."). Thus, plaintiffs' third argument is similarly contrary to law.

*Fourth*, plaintiffs also contend that "an additional hole" in defendants' personal jurisdiction argument is that if their motion to dismiss "were to be granted, the numerosity requirement under CAFA to invoke federal subject-matter jurisdiction is then lacking." (Pls.' Mot. at 7.) But "[l]itigants often plead alternative bases of jurisdiction," *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249, 1252 (5th Cir. 1975); *see also Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 502 n.1 (7th Cir. 1998) ("[a]lthough federal question jurisdiction was thereby destroyed, the complaint also invoked the district court's diversity jurisdiction," an "alternative basis of jurisdiction" that defendants did not challenge), and that is all defendants have done here. Plaintiffs do not cite even a single case suggesting otherwise; hence, this argument should also be rejected.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' motion.

DATED: September 1, 2016          Respectfully submitted,

**HEPLERBROOM LLC**

By: /s/ Beth A. Bauer
    Beth A. Bauer, #6274533
    130 N. Main Street
    PO Box 510
    Edwardsville, IL 62025
    618-307-1200
    bab@heplerbroom.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 1st day of September, 2016, a true and correct copy of the foregoing document was served upon the following via the Court's electronic notification system:

James G. Onder
William W. Blair
Michael J. Quillin
Stephanie Rados
**ONDER, SHELTON, O'LEARY**
   **& PETERSON, LLC**
110 E. Lockwood, 2nd Floor
St. Louis, Missouri 63119
Telephone: (314) 963-9000
Facsimile: (314) 963-1700
onder@onderlaw.com
blair@onderlaw.com
quillin@onderlaw.com
rados@onderlaw.com

Ted G. Meadows
Danielle Mason
David Dearing
**BEASLEY, ALLEN, CROW,**
   **METHVIN, PORTIS & MILES, P.C.**
218 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
ted.meadows@beasleyallen.com
danielle.mason@beasleyallen.com
david.dearing@beasleyallen.com

Timothy W. Porter
Patrick C. Malouf
John T. Givens
**PORTER & MALOUF, PA**
Post Office Box 12768
Jackson, Mississippi 39236
Telephone: (601) 957-1173
Facsimile: (601) 957-7366
tim@portermalouf.com
patrick@portermalouf.com
johnny@portermalouf.com

R. Allen Smith, Jr.
**THE SMITH LAW FIRM, PLLC**
681 Towne Center Boulevard, Suite B
Ridgeland, Mississippi 39157
Telephone: (601) 952-1422
Facsimile: (601) 952-1426
allen@smith-law.org

Roger C. Denton
**SCHLICHTER, BOGARD & DENTON**
100 S. 4th St., Ste. 1200
St. Louis, MO 63102
Telephone: 314-621-6115
Facsimile: 314-621-1365
rdenton@uselaws.com

                      *Attorneys for Plaintiffs*

Mary Anne Mellow
Mark A. Prost
**SANDBERG PHOENIX & VON GONTARD P.C**.
600 Washington Avenue – 15th Floor

St. Louis, MO 63101
Telephone: 314.446.4226
mmellow@sandbergphoenix.com
mprost@sandbergphoenix.com

*** Attorneys for Imerys Talc America, Inc.***

/s/ Beth A. Bauer